IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY D. JOHNSON,

    Petitioner,                   No. CIV S-04-0246 GEB JFM P

   vs.

D.L. RUNNELS, et al.,

    Respondent.                 <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In 1991, petitioner was convicted of attempted murder (Cal. Penal Code § 664) and mayhem and sentenced to life in prison with the possibility of parole,[2] pursuant to the penalty provision in Cal. Penal Code § 664 for attempted murder that is willful, deliberate, and premeditated.[3]  (Answer, Ex. 1.) In the instant action, petitioner

---

   [1] The petition and traverse were filed by petitioner in propria persona. Petitioner was appointed counsel following the filing of the motion to dismiss. On January 4, 2007, the court ordered that the matter would stand submitted on the 2004 pleadings. Counsel did not object.

   [2] Although petitioner claims he was sentenced to seven years to life, the certified copy of abstract of judgment reflects that petitioner was sentenced to life with possibility of parole. (Answer, Ex. 1.)

   [3] Petitioner contends he was convicted of aiding and abetting an attempted murder, citing Ex. E, which provides copies of aiding and abetting jury instructions. (Petition, Ex. E.)

1

challenges the 2001 decision by the California Board of Prison Terms (BPT) finding him unsuitable for parole.  This was petitioner's second suitability hearing; his first parole hearing was held in 1998.  (Petition, at 5A-5, 6.)  After carefully reviewing the record, the court recommends that the petition be denied.

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 537 U.S. 3, 7 (2002) (<u>citing</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court

---

However, the certified copy of the abstract of judgment reflects that petitioner was convicted of attempted murder and mayhem. (Answer, Ex. 1.)

decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).[4] Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

II. Procedural History

Petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior which was denied on August 14, 2002:

> A petition that fails to state a prima facie case for relief may be summarily denied. (In re Clark (1993) 5 Cal.4th 750, 781.) To establish a prima facie case, the petitioner must state with particularity the facts supporting his allegations; conclusory statements are not sufficient. (People v. Duvall (1995) 9 Cal.4th 464, 474.) The petition should include copies of "reasonably available documentary evidence in support of claims, including relevant portions of trial transcripts and affidavits or declarations." (Ibid.)
>
> Petitioner contends both that the parole board lacked evidence to support its conclusion that he was not eligible for a parole date and that he has filed and exhausted administrative appeals. He has not, however, provided documentation of either of these claims. In particular, the court would need copies of the administrative appeal documents as well as a transcript of the board's hearing and decision.

(In re Timothy D. Johnson, 02F06276, August 14, 2002 (attached to Answer, Ex. 6.)

/////

---

[4] When reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

3

1   Petitioner filed a petition for a writ of habeas corpus with the California Court of
2   Appeal, Third Appellate District. This petition was denied without comment on December 12,
3   2002. <u>In re Timothy D. Johnson</u>, C042602 (attached to Answer, Ex. 8.)
4   On February 20, 2003, petitioner filed a petition for writ of habeas corpus in the
5   California Supreme Court. (<u>Johnson v. Newland</u>, S113673, attached to Answer, Ex. 9.)
6   Petitioner asked the court to overturn the 2001 denial of parole based on a violation of
7   petitioner's due process rights. The California Supreme Court denied this petition on October
8   15, 2003. (Answer, Ex. 11.)
9   On May 16, 2003, petitioner filed another petition for writ of habeas corpus in the
10  California Supreme Court. (<u>Johnson v. Newland</u>, S116078, attached to Answer, Ex. 10.) In this
11  petition, petitioner asked the court to amend the abstract of judgment in his underlying criminal
12  case to reflect a conviction for aiding and abetting an attempted murder. (<u>Id.</u>) Petitioner argued
13  that the alleged improper abstract of judgment resulted in a violation of his due process rights at
14  each of his parole consideration hearings. (<u>Id.</u> at 4.) The California Supreme Court denied this
15  petition on October 15, 2003. (Answer, Ex. 12.)
16  Petitioner filed the instant action on February 3, 2004.
17  III. <u>Jurisdiction</u>
18  Respondent argues that California law does not give rise to a federally protected
19  liberty interest in parole release. The Ninth Circuit rejected this argument. <u>Sass v. California</u>
20  <u>Bd. of Prison Terms</u>, 461 F.3d 1123 (9th Cir. 2006).
21  IV. <u>Mootness</u>
22  Respondent asserts that the instant petition is moot because petitioner received a
23  subsequent parole hearing in 2003, where he was again found unsuitable for parole. Respondent
24  contends any "alleged or perceived defects in the 2001 decision to deny parole were mooted by
25  the parole hearing of 2003." (Answer at 19.) This argument is not persuasive because an
26  ongoing controversy exists between the parties in the instant case.

1  Under Article III of the United States Constitution, "federal courts may adjudicate
2  only actual, ongoing cases or controversies." To invoke the jurisdiction of a federal court, a
3  litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and
4  likely to be redressed by a favorable judicial decision. Lewis v. Continental Bank Corp., 494
5  U.S. 472, 477 (1990). When a federal court lacks the power to grant the relief requested, the case
6  is moot. Picrin-Peron v. Rison, 930 F.2d 773, 775 (9th Cir.1991). An exception to the mootness
7  doctrine exists when a controversy is "capable of repetition, yet evading review." Hubbart v.
8  Knapp, 379 F.3d 773, 777 (9th Cir.2004) (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)).
9  This exception applies when 1) the challenged action is too short in duration to be fully litigated
10 prior to cessation or expiration; and 2) there is a reasonable expectation that the same
11 complaining party will be subject to the same action again. Id.
12  The instant petition is not moot because the controversy between petitioner and
13 respondent is capable of repetition yet evading review. Here, the challenged action is the BPT's
14 denial of parole at a hearing in 2001, resulting in petitioner's continued confinement. The instant
15 petition was filed on February 3, 2004. By the time respondent filed an answer on October 20,
16 2004, petitioner had already had another parole hearing in 2003. The challenged action,
17 continued confinement after a parole denial, could not have been fully litigated during this short
18 period of time. Moreover, petitioner was again denied parole. Therefore the instant petition falls
19 within the exception to the mootness doctrine.
20 V. Exhaustion of Administrative Remedies
21  Respondent contends petitioner failed to file an administrative appeal within
22 ninety-days. The record reflects petitioner's appeal was received by the BPT on August 23,
23 2001. (Answer at 9, Ex. 6.)
24  The transcript from the parole hearing reflects the effective date of the BPT's
25 decision was May 4, 2001. (Answer, Ex. 3.) An appeal from the BPT's decision must be
26 submitted within ninety days of receipt of written confirmation of the decision. (Cal. Code Regs.

tit. 15, § 2052.) Petitioner contends he received the BPT's decision on or about May 18, 2001. (Traverse, at 6.) Respondent presents no evidence to the contrary. Accordingly, petitioner's appeal was due on or before August 18, 2001.

Petitioner contends he submitted his appeal to prison authorities for mailing on August 7, 2001. (Traverse at 6.) A copy of the appeal reflects it was logged in by CDC staff on August 17, 2001. (Answer, Ex. 5.) Petitioner's appeal is deemed filed on the date the appeal was delivered to prison officials for mailing. See Houston v. Lack, 487 U.S. 266, 270-71 (1988). Because petitioner's appeal was filed on August 17, 2001, one day prior to the appeal deadline, the appeal was timely.

Respondent further contends that petitioner's claims are procedurally barred because petitioner failed to present a prima facie case to the state courts. The state superior court found that petitioner failed to provide substantiating documents and raised only conclusory allegations in support of his habeas petition. Respondent contends that subsequent state court opinions "essentially echoed" this decision by issuing silent denials. Although the question of procedural default and other general prerequisites for federal habeas corpus which are unrelated to the merits of the particular claims "should ordinarily be considered first," a reviewing court need not do so "invariably," especially when those issues turn on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (court bypassed question of procedural default to reach the merits of petitioner's claims). In order to resolve whether the instant petition is procedurally defaulted, the court would be required to address complicated issues. In this case, the court finds that petitioner's claims can be resolved more easily by addressing them on the merits. Accordingly, without deciding the issue, the court will assume for the sake of these findings and recommendations that petitioner's claims are not procedurally defaulted.

VI.  Background

The factual background of petitioner's offense is relevant to the analysis of petitioner's claims. None of the state court opinions included a factual summary. Neither party

has provided a copy of the probation report or a detailed statement of the facts underlying petitioner's conviction. Petitioner did provide a copy of a psychosocial evaluation issued by Charles Taylor, Ph.D., which provides the following "life crime" review:

> [Petitioner] was 22 years old at the time of the crime. There is some confusion noted in various reports of the crime. In the BPT report June 1998, it was noted that the inmate and his co-defendant shot the victim numerous times with a shotgun. It was apparently believed by the co-defendants that she, the victim, was a police informant. The injuries resulted in the amputation of one of her arms. Mr. Johnson has maintained innocence.
>
> He reported today that he agrees with everything written "up to the time that the victim was dropped off." He stated that she then obtained a ride from someone else. He noted that one of her friends was killed, she was drinking, and that is why he told his friend to drop her off. He noted that she testified against him because charges against here were dropped regarding the money orders. He noted that he has"matured a lot in many ways" such as in "rational thinking . . . politically aware . . . understand certain crimes more." His overall thinking has "changed dramatically," although had some difficulty explaining what he meant by this. He noted that he realizes that selling drugs "does hurt people who use it" and sees now that "time has been wasted." He does not know where the victim is and therefore believes that she will not be testifying for him. He is optimistic of a positive court outcome "even though they say mean things." He noted that he was convicted of aiding and abetting attempted murder," not for attempted murder.

(Petitioner's Ex. D.)

The BPT characterized the commitment offense as follows:

> [Petitioner] and his crime partner took an acquaintance, a female acquaintance, a 22 year old, Katrina Haines, she was accused of being an informant. The facts show that she had known both . . . [petitioner] and his crime partner. She was accused of wearing a wire by his crime partner. The car that she was driving in with the two was stopped. She was forced outside the car. She was shot apparently by the crime partner, left to die in a ditch. She did end up with an amputated arm. She was fortunately found by some passers by and her life was saved. And I will also note for the record that [petitioner] contends his innocence.

(Answer, Ex. 3, Decision, p. 5.)

/////

VII. Petitioner's Claims

      A. Some Evidence

Petitioner contends there was no evidence to support the BPT's decision. (Traverse at 20.) Respondent argues there was sufficient evidence to support the BPT's decision.

In the parole context, the requirements of due process are met if "some evidence" supports the decision." Id. at 1128-1129. In reviewing the BPT decision, the court analyzes whether the factors relied on by the BPT, set forth in the relevant regulations, are supported by some evidence. Cal. Code of Regulations, § 2402(c), sets forth the circumstances tending to show unsuitability.

In Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) the Ninth Circuit indicated that a continued reliance on an unchanging factor such as the circumstances of the offense could result in a due process violation. Biggs was serving a sentence of twenty-five years to life following a 1985 first degree murder conviction. In the case before the Ninth Circuit, Biggs challenged the 1999 decision by the BPT finding him unsuitable for parole despite his record as a model prisoner. Id., 334 F.3d at 913. While the Ninth Circuit rejected several of the reasons given by the BPT for finding Biggs unsuitable, it upheld three: 1) petitioner's commitment offense involved the murder of a witness; 2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; 3) petitioner could benefit from therapy. Id., 334 F.3d at 913.

The Ninth Circuit cautioned the BPT regarding its continued reliance on the gravity of the offense and petitioner's conduct prior to the offense:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest.

Id., 334 F.3d at 916.

Here, the BPT identified several factors supporting its decision to find petitioner unsuitable for parole:

    1. The offense was carried out in an especially cruel manner. (Answer Ex. 3, Decision, p. 1; Cal. Code Regs. tit. 15, § 2402(c)(1). The offense was carried out in a manner demonstrating a callous disregard for human suffering. (Answer, Ex. 3, Decision, p. 1; Cal. Code Regs. tit. 15, § 2402(c)(1)(D).)

    2. The motive of the crime was inexplicable or very trivial in relation to the offense. (Answer, Ex. 3, Decision, p. 1; Cal. Code Regs. tit. 15, § 2402(c)(1)(E).)

    3. Petitioner failed previous grants of parole. (Answer, Ex. 3, Decision, p. 2.)

    4. Petitioner failed to profit from society's previous attempts to correct his criminality. Petitioner had juvenile probation, a prior prison term and adult probation. (Id.)

    5. Petitioner's previous criminal record supported a finding of unsuitability. (Id.) Petitioner was convicted as a juvenile of driving a stolen vehicle, as an adult of having rock cocaine for sale, and petitioner violated his parole and was returned to prison. Petitioner also had a misdemeanor possession of a stun gun. While petitioner had other arrests, he had no other convictions.

    6. Petitioner had an unstable social history. (Id.)

    7. Petitioner had programmed in a limited manner while incarcerated. (Id.; Cal. Code Regs. tit. 15, § 2402(d)(9)(institutional activities indicate enhanced ability to function within law upon release).)

    8. Petitioner had not developed a marketable skill. (Answer, Ex. 3, Decision, p. 2; Cal. Code Regs. tit. 15 § 2402(d)(8).) Petitioner failed to upgrade vocationally as previously recommended by the BPT. (Id.) Petitioner had not sufficiently participated in beneficial self-help and therapy programming, and failed to demonstrate evidence of positive change. (Id.)

    9. Petitioner had engaged in misconduct while incarcerated. (Answer, Ex. 3, Decision, p. 2-3; Cal. Code Regs. tit. 15, § 2402(c)(6)(serious misconduct while in prison

9

indicates unsuitability).  Petitioner had received ten 115s(prison disciplinaries), seven of which occurred after the 1998 BPT hearing.

10.  The BPT refused to consider the report of Charles Taylor, Ph.D, because it did not give an assessment of dangerousness and did not "delve into the factors as written." (Answer, Ex. 3, Decision, p. 3.)

11.  The BPT noted petitioner contended he had realistic parole plans, but the BPT stated it did not have updated verification that petitioner could still work at his stepfather's business and have residency available through family members.  (Id.; Cal. Code Regs. tit. 15, § 2402(d)(8).)

12.  The District Attorney of Sacramento County opposed petitioner's release.

13.  The correctional counselor wrote that petitioner would pose an unpredictable degree of threat.

The BPT made the following findings:

> [Petitioner] does need therapy in order to face, discuss, and understand the causative factors that led to the life crime, and to explore his full culpability into the criminal activity.  And until progress is made he continues to be unpredictable and a threat to others.  His gains are recent and he must demonstrate an ability to maintain gains over an extended period of time.  Nevertheless, he should be commended for his good work reports, several laudatory chronos, especially breaking up one of the mutual combat situations here, and for his paralegal studies.  However, these positive aspects of his behavior do not yet outweigh the factors of unsuitability.

(Answer, Ex. 3, Decision p. 3-4.)

Petitioner contends he has obtained a marketable skill and upgraded vocationally by obtaining a radiologic technology certificate.  Petitioner cites his participation in "Men's Violence Prevention Seminar," "Narcotics Anonymous Program," and "Alcoholics Anonymous Program" as evidence of his participation in self-help programs.  However, these were only three of the myriad factors the BPT used to determine petitioner's eligibility for parole.  Moreover,

/////

petitioner failed to address the seven 115 disciplinaries he has received since his 1998 parole hearing. The BPT panel described these disciplinaries as:

> one on 9/18 of '98 for failing to report, 9/19 of '98 for failing to comply with grooming standards, 11/7 of '98 for taking materials from the law library. 10/10 of /99 for being out of bounds, 10/11/99 for possession of marijuana, and 11/24/99 for possession of controlled substance. That also being marijuana . . . .

(Answer, Ex. 3, at 17.) While this court would not construe all of these disciplinaries as serious misconduct in prison, Cal. Code of Regulations, § 2402(c)(6), possession of marijuana is against the law and would trigger a revocation of parole were petitioner released on parole. Thus, at least two of these disciplinaries present some evidence to support the BPT's denial.

In this case, as in Biggs and Sass, the BPT's decision that petitioner was unsuitable for parole was supported by "some evidence" that bore "indicia of reliability." At the conclusion of the April 11, 2001 hearing, the BPT specifically found petitioner unsuitable for parole based upon the following: the cruel manner in which the commitment offense was carried out; since the last parole hearing, petitioner had sustained seven 115 disciplinary violations; Dr. Taylor's March 15, 2001 psychological report did not give the BPT much to go on and indicated a need for a longer period of observation; petitioner had not completed necessary programming and needs time to gain that programming; petitioner needs to more fully participate in self-help and therapy programming, which he's been lacking; and also to complete a vocation. (Id.)[5] The BPT also found petitioner needed to undergo therapy. (Answer, Ex. 3, Decision p. 4.)

Contrary to Biggs, this is not a case where petitioner's due process rights are implicated by repeated parole denials based upon continued reliance solely on the unchanging factors of the commitment offense and conduct prior to imprisonment in the face of a positive psychological report and substantial evidence of remorse and rehabilitation. This court cannot

---

[5] Although the BPT stated these were the specific reasons for the finding petitioner was unsuitable for parole, the factors set forth above, numbered 1 - 13, were discussed at the hearing and specifically referenced at the beginning of the written decision. (Answer, Ex. 3, Decision, p. 1-3.)

say that the record of petitioner's April 11, 2001 suitability hearing is "so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." Hill, 472 U.S. at 457. Accordingly, petitioner should not be entitled to relief on his due process claim.

### B. Claim Two: BPT's Failure to Accept Dr. Taylor's Report

Petitioner contends the BPT's failure to accept Dr. Taylor's report violated his constitutional rights. The BPT reviewed Dr. Taylor's report and found it did not give an assessment of dangerousness, did not delve into the factors as written, and didn't give the BPT much to go on. Moreover, as noted by respondent, petitioner's attorney at the BPT hearing agreed with the BPT members' assessment of Dr. Taylor's report, stating "It reads more like a Board report." (Answer, Ex. 3, Hearing Transcript, at 37-38.) Even assuming, *arguendo*, that the BPT had given credence to Dr. Taylor's report, the report would not have outweighed the other factors cited by the BPT in denying parole. This claim should also fail.

### C. Claim Three: Indeterminate Sentencing/Breach of Contract

Petitioner contends that the BPT breached its contract for indeterminate life sentences by failing to grant petitioner parole. Under state law, a life prisoner must first be found suitable for parole before a parole date is set. See In Re Stanworth, 33 Cal.3d 176, 183 (Cal.1982). The failure to set a parole date did not violate the Ex Post Facto Clause, U.S. Const. art. I, § 10. "To fall within the ex post facto prohibition, a law must be retrospective--that is, 'it must apply to events occurring before its enactment'--and it 'must disadvantage the offender affected by it,' . . . by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citations omitted). The California law concerning the setting of a parole date was not changed. The ISL and DSL both required that the prisoner be found suitable for parole before a parole date could be set. See Stanworth, 33 Cal.3d at 183. And the ISL and DSL both used the same criteria for determining whether a prisoner was suitable for parole. See Connor v. Estelle, 981 F.2d at 1033-34. The Ex Post Facto Clause was not violated because the law did not change to the detriment of the prisoners. Neither the DSL

nor the ISL imposed on the BPT an obligation to set a parole release date because petitioner has not been found suitable for parole. Thus, this court cannot find that the BPT breached any contract by failing to set a parole date for petitioner.

To the extent petitioner contends his right to equal protection of the laws has been violated because he is having to serve more time than other persons convicted of attempted murder, his claim fails as well. A petitioner raising an equal protection claim in the parole context must demonstrate that he was treated differently from other similarly situated prisoners and that the BPT lacked a rational basis for its decision. See McGinnis v. Royster, 410 U.S. 263, 269-70 (1973) (reviewing differences in release dates under rational basis test and balancing the state's efforts to ensure that prisoners are sufficiently prepared for release to protect public safety, on the one hand, with the prisoner's interest in release, on the other hand); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991). Petitioner has not made the required demonstration. Accordingly, petitioner's equal protection claim should be denied.

### D.  Claim Four:  Penal Code Section 3041 & Cruel and Unusual Punishment

In claim four, petitioner argues that Cal. Penal Code § 3041 requires the BPT to give him a parole date and contends his confinement is disproportionate to his crime, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment. Section 3041 provides that one year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the BPT shall meet with the inmate and shall normally set a parole release date. Petitioner appears to argue that because § 3041 provides that the BPT shall normally set parole release dates, the BPT violated due process and his right to equal protection by failing to set his parole release date.

California's parole scheme gives rise to a cognizable liberty interest in release on parole. Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). "In the parole context, the requirements of due process are met if 'some evidence' supports the decision." Id. If there is not some evidence to support a decision denying parole, due process is violated. Therefore, even

13

though California law states that the BPT shall normally set parole release dates, due process does not require the BPT to state a date where some evidence exists demonstrating that petitioner should not be paroled. Accordingly, petitioner's claim that the BPT was required to set his parole release date pursuant to Cal. Penal Code § 3041 is without merit.

Petitioner's allegation that he is being subjected to excessive punishment is unsubstantiated and cannot form the basis for an Eighth Amendment or a due process claim. California Penal Code § 664 provides that if the crime attempted is willful, deliberate and premeditated murder, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole. (Id.) Petitioner is being treated as a prisoner who has been sentenced to a life sentence with the possibility of parole but who has not yet been found suitable for parole. That is, of course, what he is. The BPT hearing that is the subject of this petition has been conducted for the purpose of determining when and if petitioner will receive a parole release date. Accordingly, he has not been treated as if parole were not possible. Further, petitioner's claim that the BPT is "required" to set a release date for him is not supported by the law. The BPT is required to set a release date only after a prisoner has been found suitable for parole. See Connor v. Estelle, 981 F.2d 1032, 1033 (9th Cir. 1992) (per curiam); California Penal Code § 3041(b). Petitioner has not yet been found suitable for parole; accordingly, the BPT is not required to set a release date for him.

Petitioner has also failed to establish that his sentence of life with the possibility of parole constitutes cruel and unusual punishment. Successful challenges to the proportionality of particular sentences are "exceedingly rare." Solem v. Helm, 463 U.S. 277, 289-290 (1983). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (citing Solem v. Helm). The United States Supreme Court has held that it was not an unreasonable application of clearly established federal law for the California Court of Appeal to affirm a sentence of two

1  consecutive 25 year to life imprisonment terms for a petty theft with a prior conviction involving
2  theft of $150.00 worth of videotapes.  See Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  See also
3  Ewing v. California, 538 U.S. 11, 29 (2003) (holding that a sentence of 25 years to life in prison
4  imposed on a grand theft conviction involving the theft of three golf clubs from a pro shop was
5  not grossly disproportionate and did not violate the Eighth Amendment).

6          Petitioner's sentence is not inconsistent with the holdings of the United States
7  Supreme Court noted above.  The sentence imposed was within statutory limits for the offense
8  committed by petitioner and was not grossly disproportionate to the crime of conviction.  See
9  Andrade, 538 U.S. at 77.  See also Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7
10  (1979) ("[t]here is no constitutional or inherent right of a convicted person to be conditionally
11  released before the expiration of a valid sentence").  Accordingly, petitioner is not entitled to
12  relief on this claim.

13          E.  Claims Five & Six:  Petitioner's Underlying Conviction

14          Petitioner claims his constitutional rights were violated because the BPT
15  consistently referred to petitioner's crime as "first degree attempted murder" and applied a "non-
16  crime" description to petitioner's conviction.  (Petition at 5-A5.)  As noted above, petitioner
17  contends he was convicted of aiding and abetting an attempted murder and was sentenced to
18  seven years to life.  However, the certified abstract of judgment reflects that petitioner was
19  convicted of attempted murder and mayhem and sentenced to life in prison with the possibility of
20  parole, pursuant to the penalty provision in PC 664 for attempted murder that is willful,
21  deliberate, and premeditated.  (Answer, Ex. 1.)

22          The BPT has no authority to revise the judgment of conviction.  The record
23  clearly reflects that petitioner was not convicted of aiding and abetting but was, in fact, convicted
24  of attempted murder and mayhem.  The California Supreme Court denied petitioner's claim that
25  he had been convicted of aiding and abetting attempted murder.  (California Supreme Court Case
26  No. 116078, (Answer, Ex. 12 )  Thus, the BPT did not commit error by considering petitioner's

crime as attempted murder and mayhem.  While the BPT's reference to the conviction as "first degree attempted murder" was incorrect, the record reflects that the BPT's denial of petitioner's parole was not based on the elements of the crime of murder, nor was it based solely on petitioner's role in the underlying crime.  Thus, this claim should fail.

      F.  Claim Seven

Petitioner contends the BPT "made up their own statute and regulation to deny petitioner a parole date." (Petition at 5B-25.)  The court finds this claim largely duplicative of claims addressed above and, in light of the court's above findings, recommends that this claim be denied as well.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: January 29, 2007.

UNITED STATES MAGISTRATE JUDGE

001; john0246.157